UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEITH LESCHINSKY & ANDREW PISKO,<br><br>              Plaintiffs,<br><br>    v.<br><br>ELIZABETH OFFICER CACERES,<br><br>              Defendant. | CIVIL ACTION NO. 3:23-CV-822<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

This civil rights action was initiated by Plaintiffs Keith Leschinsky ("Leschinsky") and Andrew Pisko ("Pisko") (collectively, "Plaintiffs") on May 18, 2023, by the filing of a complaint against Defendant Police Officer Elizabeth Caceres ("Officer Caceres"). (Doc. 1). In the complaint, Plaintiffs assert claims under 42 U.S.C. § 1983 for First Amendment retaliation and state law malicious prosecution. (Doc. 1; Doc. 19, ¶ 1). Presently before the Court are two motions for summary judgment. (Doc. 18; Doc. 23). The motions each raise similar issues and arguments and thus, this Court will address them together. For the reasons set forth herein, Plaintiffs' motion for summary judgment shall be **DENIED**. (Doc. 18). Officer Caceres's motion for summary judgment shall be **DENIED**. (Doc. 23).

I. **BACKGROUND AND PROCEDURAL HISTORY**

This factual background is taken from the parties' statements of material facts and accompanying exhibits, as well as the parties' responses thereto. (Doc. 19; Doc. 21; Doc. 23-2; Doc. 24). On August 8, 2021, Pisko made a Facebook post advertising that he was seeking to hire a bodyguard for his son. (Doc. 19, ¶ 3; Doc. 21, ¶ 3). Pisko stated that he was "looking for someone (preferably with a concealed carry permit) to be at the bus stop on school days

to make sure he gets off bus safely and to safely escort him up the street to his grandmother's house" due to a "nuisance property" which left him "extremely concerned about the tenants of this property and how they carelessly race cars and atv's" on the street, risking injury. (Doc. 19, ¶ 3; Doc. 21, ¶ 3). Many individuals commented on the Facebook post, and Pisko deleted and saved some comments he found inappropriate, (Doc. 19-6, at 15), including at least one that made a threat to the safety of the tenants at the "nuisance property" (Doc. 1-3). Pisko also responded to other comments to express appreciation and agreement that the situation is "a shame." (Doc. 1-1; Doc. 19, ¶ 5; Doc. 21, ¶ 5). Pisko additionally made a comment offering to provide the prospective bodyguard with a taser. (Doc. 1-1; Doc. 19, ¶ 5; Doc. 21, ¶ 5). On August 11, 2021, Leschinsky commented on Pisko's Facebook post noting his awareness of the problem. (Doc. 23-2, ¶ 4; Doc. 24, ¶ 4).

Also on August 11, 2021, Pisko received a threatening phone call from the tenants of the property and called the police to make a report. (Doc. 23-2, ¶ 5; Doc. 24, ¶ 5). Officer Caceres stated in an incident report that on the same day, "the Old Forge Police Department received a dispatch request in relation to a call of harassment at a business located at 250 North Main Street," a fact that Plaintiffs dispute. (Doc. 23-2, ¶ 6; Doc. 24, ¶ 6). Again relying on her police report, upon arrival, Officer Caceres met with the complainant, Nicolas Smith ("Smith"), who reported "constant harassment from the neighbors and unnecessary gestures/language." (Doc. 23-2, ¶ 7). Plaintiffs also dispute this fact. (Doc. 24, ¶ 7). According to the disputed incident report, Smith also told officers that Leschinsky "made a [Facebook] comment about 'boxing matches and coming over [to] his home to have a boxing match.'" (Doc. 23-2, ¶ 10; Doc. 24, ¶ 10). Officer Caceres spoke with Pisko and Leschinsky, who

2

admitted to the Facebook post but denied any verbal harassment about "boxing." (Doc. 23-2, ¶ 14; Doc. 24, ¶ 14). Officer Caceres then charged Pisko and Leschinsky with harassment pursuant to 18 Pa. C.S. § 2709(a)(3). (Doc. 23-2, ¶ 16; Doc. 24, ¶ 16). Plaintiffs allege that the only basis for the charges were their social media posts, which they contend consist of constitutionally protected speech, and "gestures," which they did not make. (Doc. 23-2, ¶¶ 17-18; Doc. 24, ¶¶ 17-18). The charges against Plaintiffs were dismissed after a preliminary hearing. (Doc. 19, ¶¶ 12, 20; Doc. 21, ¶¶ 12, 20).

On May 18, 2023, Plaintiffs filed the complaint, alleging that Officer Caceres's charges against them were in violation of the First Amendment and state malicious prosecution protections. (Doc. 1). On June 12, 2024, Plaintiffs filed a motion for summary judgment, along with a brief in support, a statement of facts, and supporting exhibits. (Doc. 18; Doc. 19; Doc. 20). On July 1, 2024, Officer Caceres filed her brief in opposition to Plaintiffs' motion for summary judgment, along with a response to Plaintiff's statement of facts and her own supporting exhibits. (Doc. 21). On July 8, 2024, Plaintiffs filed a reply brief. (Doc. 22). On July 11, 2024, Officer Caceres filed a motion for summary judgment, along with a brief in support, a statement of facts, and supporting exhibits. (Doc. 23). On July 13, 2024, Plaintiffs filed a brief in opposition to Officer Caceres's motion for summary judgment and a response to her statement of facts. (Doc. 24; Doc. 25). The motions are thus ripe for disposition.

## II.   LEGAL STANDARDS

### A.   MOTION FOR SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might

3

affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." *See* M.D. Pa. L.R. 56.1.

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson,* 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute

of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories, or the like to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex,* 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential) ("[U]nsupported deposition testimony, which is contradicted by the record, is insufficient to defeat summary judgment."); *Nat'l Labor Rel. Bd. v. FES*, 301 F.3d 83, 95 (3d Cir. 2002) ("[The plaintiff's] testimony . . . amounts to an unsupported, conclusory assertion, which we have held is inadequate to satisfy the movant's burden of proof on summary judgment.").

    B. 42 U.S.C. § 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or

immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

"Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

### III.  DISCUSSION

#### A. FIRST AMENDMENT RETALIATION CLAIM

The parties each move for summary judgment on Plaintiff's First Amendment claims. (Doc. 20, at 8; Doc. 21-2, at 6; Doc. 25, at 4). Officer Caceres argues that "Plaintiffs have failed to demonstrate that their protected speech was the substantial motivating factor behind the issuance of the harassment citations" and that "presence of probable cause for the citations and the context in which the speech occurred provide a lawful basis" for Officer Caceres's conduct. (Doc. 21-1, at 8-9). Officer Caceres also moves for summary judgment on the First Amendment claim on the basis that she is entitled to qualified immunity. (Doc. 23-3, at 5). Plaintiffs respond that they are entitled to summary judgment on their First Amendment claim because their speech and conduct was constitutionally protected, the harassment charge constituted retaliatory action because Defendants had no probable cause to charge Plaintiffs,

6

and there was a causal link between Plaintiffs' exercise of their rights and Officer Caceres's charging them with harassment. (Doc. 20, at 9-13).

A retaliation claim under the First Amendment requires: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). In the context of an alleged retaliatory arrest, a retaliation claim must fail unless plaintiff shows that there was no probable cause for the arrest.[1] *Nieves v. Bartlett*, 139 S.Ct. 1715, 1725 (2019) (citing *Hartman v. Moore*, 547 U.S. 250, 265-66 (2006)). Probable cause "speaks to the objective reasonableness of an arrest," or in this case, a prosecution or charge. *Nieves*, 139 S.Ct. at 1724. Probable cause indicates that a retaliatory motive did not cause the arrest or charge and its absence indicates the opposite. *Nieves*, 139 S.Ct. at 1724. However, a plaintiff need not establish the absence of probable cause "where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Nieves*, 139 S.Ct. at 1727; see also *Falcone v. Dickstein*, 92 F.4th 193, 211 (3d Cir.), *cert. denied sub nom. Murray-Nolan v. Rubin*, 144 S. Ct. 2560, 219 L. Ed. 2d 1227 (2024).

---

[1] "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured – the motive must cause the injury." *Nieves*, 139 S.Ct. at 1722. Thus a plaintiff must show that the adverse action – in this case, the harassment charge – would not have taken place without the retaliatory motive. *Nieves*, 139 S.Ct. at 1722. In retaliatory arrest and prosecution claims, "proving the link between the defendant's retaliatory animus and the plaintiff's injury ... 'is usually more complex than it is in other retaliation cases'" because the ultimate motive for prosecuting or arresting is often hard to decipher. *Nieves*, 139 S.Ct. at 1723 (internal citation omitted). To account for this challenge, in *Hartman v. Moore* the Supreme Court adopted a requirement that "plaintiffs plead and prove the absence of probable cause for the underlying criminal charge" in retaliatory prosecution claims. *Nieves*, 139 S.Ct. at 1723 (citing *Hartman*, 547 U.S. at 265-66).

1. **Whether Officer Caceres Had Probable Cause to Charge Plaintiffs with Harassment**

Probable cause exists where "facts and circumstances within the officer's knowledge" are "sufficient to warrant a prudent person. . .in believing. . .that the suspect has committed, is committing, or is about to commit an offense." *Johnson v. Campbell*, 332 F.3d 199, 211 (3d Cir. 2003); *see also Falcone*, 92 F.4th at 211. "'Generally, the existence of probable cause is a factual issue,' although summary judgment can be granted in an appropriate case." *Valentin v. Philadelphia Cnty. Sheriff's Dep't*, No. 22-1527, 2023 WL 5607556, at *3 (3d Cir. Aug. 30, 2023) (quoting *Groman v. Twp. of Manalapan*, 47 F.3d 628, 635 (3d Cir. 1995). Such an appropriate case requires a court to find that, based on the record before it, no reasonable juror viewing the evidence most favorably to the non-moving party could conclude either that probably cause existed or did not. *See Dempsey v. Bucknell Univ.*, 834 F.3d 457, 468 (3d Cir. 2016). Given this burden, in most cases it is most appropriate for a jury to make a probable cause determination. *Dempsey*, 834 F.3d at 467-68.

Here, Officer Caceres charged Plaintiffs with harassment under 18 Pa. C.S. § 2709(a)(3). Doc. 19, ¶¶ 12, 20; Doc. 21, ¶¶ 12, 20; Doc. 23-2, ¶ 16; Doc. 24, ¶ 16). After a preliminary hearing, these charges that were dismissed. (Doc. 19, ¶¶ 12, 20; Doc. 21, ¶¶ 12, 20; Doc. 23-2, ¶ 16; Doc. 24, ¶ 16). A person is guilty of harassment if he "with intent to harass, annoy or alarm another, engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose." 18 Pa. C.S. § 2709(a)(3). Plaintiffs argue Officer Caceres lacked probable because the basis of her harassment charge was Plaintiffs' protected speech and because at the time she charged Plaintiffs, she could not establish the elements of a

harassment. (Doc. 20, at 11-12).[2] Officer Caceres responds that she had probable cause to charge Plaintiffs because she based her decision on information provided to her by the assistant district attorney, complaints from Smith, and the content of Plaintiffs' Facebook posts. (Doc. 21-2, at 8-11).

The Court finds here that it cannot determine whether the record contains conclusive evidence of probable cause, partly due to the lack of citations to the record in the parties' briefing. For example, Officer Caceres asserts she had probable cause to charge Plaintiffs based on "the complaints, the content of the Facebook posts, and the advice from the Assistant District Attorney." (Doc. 21-2, at 8). These materials, however, are not cited in the brief alongside this argument. Further, Plaintiffs' briefing does not identify any evidence in

---

[2] Plaintiffs also contend that Officer Caceres improperly relied on hearsay to support her argument that she had probable cause to charge Plaintiffs with harassment. (Doc. 25, at 10). Officer Caceres relies on hearsay by referring to the incident report to support her contention that she had probable cause to charge Plaintiffs. Without opining on whether the incident reports constitute hearsay, the Court here notes that Officer Caceres is entitled to refer to hearsay when for the purposes of establishing probable cause. *See Warner v. McCunney*, No. CIV.A. 05-1248, 2005 WL 2811738, at *3 (E.D. Pa. Oct. 27, 2005) (recognizing that "evidence establishing probable cause may be hearsay."), *aff'd*, 259 F. App'x 476 (3d Cir. 2008) (citing *Franks v. Delaware*, 438 U.S. 154, 165 (1978)); *see also Evans v. City of Newark*, No. CV1400120KMMAH, 2023 WL 2535283, at *18 n.9 (D.N.J. Mar. 16, 2023) ("[w]hatever its merits, the hearsay argument is irrelevant for purposes of evaluating the probable cause possessed by the police. Police may rely on hearsay evidence to supply the probable cause necessary to make an arrest.") (citations omitted); *see also Miller v. Ctr. Cnty.*, No. 4:15-CV-1754, 2016 WL 4582063, at *7 (M.D. Pa. Sept. 1, 2016) (noting that hearsay may support an affidavit of probable cause and stating "[i]n judging whether particular averments establish probable cause, we are mindful of the principle that probable cause [. . . ] is a practical, non-technical conception requiring a consideration of the totality of the circumstances"), *aff'd sub nom. Miller v. Cnty. of Ctr.*, 702 F. App'x 69 (3d Cir. 2017); *Smith v. Angelo*, No. CV 14-1066-GMS, 2017 WL 2276985, at *1 n.2 (D. Del. May 25, 2017), *aff'd*, 765 F. App'x 757 (3d Cir. 2018) ("Further, the Third Circuit has made clear that 'probable cause may rest upon hearsay'") (quoting *Torres v. City of Philadelphia*, No. 13–2710, 2016 WL 7396723, at *2 (3d Cir: Dec. 21, 2016).

support of their assertion that Officer Caceres lacked probable cause.[3] (Doc. 25, at 8).

Regardless, upon reviewing the parties' Statement of Facts, the Court finds reasonable jurors could disagree on the issue of probable cause. (Doc. 19; Doc. 23-2; Doc. 24). First, based on the record, there appears to be no evidence that Plaintiffs acted in a threatening way beyond their Facebook posts. Second, reasonable jurors could disagree about the import of the Facebook posts, police report, and Officer Caceres's deposition testimony on the probable cause analysis. (Doc. 19-1; Doc. 23-5). Accordingly, because the issue of probable cause is better decided by a jury than the Court on a motion for summary judgment, the Court will not decide or dismiss Plaintiffs' retaliation claim at this juncture. The Court will **DENY** the parties' motions on this basis. (Doc. 18; Doc. 23). *See Toth v. Rocco*, No. CIV.A. 11-437, 2011 WL 5878049, at *7 (W.D. Pa. Nov. 23, 2011) (denying summary judgment and leaving the issue of whether an officer had probable cause to lodge harassment charges to a jury).

### 2. Whether Officer Caceres Is Entitled to Qualified Immunity

Officer Caceres also moves for summary judgment on the First Amendment claims because, according to her, she is entitled to qualified immunity.[4] (Doc. 23-3, at 5). Under the doctrine of qualified immunity, law enforcement officers, like other public officials, performing discretionary duties within the scope of their employment, are "shielded from

---

[3] Plaintiffs do cite record evidence in their "Defendant's Final Arguments" section. (Doc. 25, at 10). However, the Third Circuit has identified briefing such that of the parties here to be a "serious problem." *Schock v. Baker*, 663 F. App'x 248 (3d Cir. 2016). The Court shares in this sentiment, especially considering this case is counseled on both sides.

[4] The Court also finds Plaintiffs' qualified immunity arguments to be disorienting, largely due to their citations to "ECF 9" and lack of arguments explicitly addressing the two-pronged test for qualified immunity. (Doc. 25, at 3-5). Plaintiffs do not address whether the right at issue was clearly established at the time of the alleged violation.

liability for civil damages insofar as their conduct does not violate clearly established statutory constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The two-pronged test for whether qualified immunity applies requires this court to determine (1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right" and (2) "whether the right at issue was clearly established at the time of a defendant's alleged misconduct." *Montanez v. Thompson*, 603 F.3d 243, 250 (3d Cir.2010) (quoting *Pearson v. Callahan*, 555 U.S. 223 (2009)).

Turning first to prong one of the qualified immunity test, for the reasons stated above, there remains a question of fact regarding whether Officer Caceres violated Plaintiffs' constitutional rights. While qualified immunity is a question of law and "should be resolved at the earliest possible stage of litigation," it cannot be resolved when there are remaining questions of fact as to whether a right was violated. *Anderson v. Creighton*, 483 U.S. 635 (1987); *see Curly v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002) ("[j]ust as the granting of summary judgment is inappropriate when a genuine issue as to any material fact exists, a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis."); *see also Larnerd v. Mong*, No. 1:14-CV-1204, 2015 WL 5601949, at *8 (M.D. Pa. Sept. 21, 2015). Accordingly, the Court finds a qualified immunity determination would be premature. *See Curley v. Klem*, 499 F.3d 199, 211 (3d Cir. 2007) (affirming that district courts may "permit the jury to resolve the disputed facts upon which the court can then determine, as a matter of law, the ultimate question of qualified immunity").Officer Caceres's motion for summary judgment on the basis of qualified

immunity will therefore be **DENIED without prejudice**.[5] (Doc. 113); see *Contreras v. Conrad*, No. 3:17-CV-02360, 2020 WL 2193429, at *9 (M.D. Pa. May 6, 2020) (denying summary judgment on qualified immunity argument because genuine issues of material fact existed as to whether defendants violated plaintiff's constitutional rights); see also *Hindman v. City of Pittsburgh, Pennsylvania*, No. 2:23-CV-01873-CCW, 2024 WL 4198152, at *7 (W.D. Pa. Sept. 16, 2024) (finding a probable cause determination must be made before deciding qualified immunity).

### B. MALICIOUS PROSECUTION CLAIM

To prevail on a malicious prosecution claim asserted pursuant to either § 1983 or under state law, a plaintiff "must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; [and] (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice." *Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007) (emphasis added) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)); see *Hilfirty v. Shipman*, 91 F.3d 573, 579 (3d Cir. 1996); *Tereo v. Smuck*, No. 1:16-CV-1436, 2018 WL 4404676, at *6 (M.D. Pa. Sept. 17, 2018) (listing the elements of a malicious prosecution claim). Here, the Court has found that there is a genuine question of material fact in dispute regarding whether Officer Caceres had probable cause to charge and prosecute Plaintiffs. As such, Officer

---

[5] Although the Court denies Caceres's motion for summary judgment on Plaintiffs' First Amendment claims, Caceres may again raise qualified immunity as a defense after the fact finder has resolved the disputed issues. See *Geist v. Ammary*, 40 F. Supp. 3d 467, 483 (E.D. Pa. 2014). ("Qualified Immunity, however, may be raised again as a defense after the disputed issues of fact are resolved.").

Caceres is not entitled to summary judgment on Plaintiffs' malicious prosecution claims. Accordingly, Officer Caceres's motion for summary judgement on Plaintiffs' malicious prosecution claims shall be **DENIED**. (Doc. 23).

IV.    CONCLUSION

For the foregoing reasons, Plaintiffs and Officer Caceres's motions for summary judgment are **DENIED**. (Doc. 18; Doc. 23).

An appropriate Order follows.

Dated: March 27, 2025                              *s/ Karoline Mehalchick*
                                                   **KAROLINE MEHALCHICK**
                                                   **United States District Judge**